## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRWIN PHILLIPS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PATHEON N.V., PAUL S. LEVY, DANIEL AGROSKIN, HUGH WELSH, PHILIP EYKERMAN, GARY PISANO, PAMELA DALEY, JEFFREY P. MCMULLEN, WILLIAM B. HAYES, HANS PETER HASLER, CHARLES COGUT, and STEPHAN TANDA,<br><br>Defendants. | Case No.: 1:17-cv-04604<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**DEMAND FOR JURY TRIAL** |

Irwin Phillips ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Patheon N.V. ("Patheon" or the "Company") against Patheon and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Patheon, the "Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), 78t(a), SEC Rule 14d-9, 17 C.F.R. 240.14d-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the tender offer ("Tender Offer") by Thermo Fisher (CN) Luxembourg S.à r.l. ("Thermo Fisher") to purchase all of the issued and outstanding shares of Patheon common stock for $35.00 per share (the "Offer Price").

2.      On May 31, 2017, in order to convince Patheon shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9

Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC").  In particular, the Recommendation Statement contains materially incomplete and misleading information concerning Patheon's financial projections and the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

3.     The Tender Offer is scheduled to expire on August 10, 2017 (the "Expiration Date").  It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they can properly determine whether to tender their shares.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the proposed merger, unless and until the material information discussed below is disclosed to Patheon shareholders or, in the event the proposed merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e), 14(d)(4) and 20(a) of the Exchange Act.

6.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Patheon listed its tradeable securities on the New York Stock Exchange;

and (iii) Defendants have agreed to a forum selection clause vesting exclusive federal jurisdiction to this Court in connection with transactions related to the proposed merger.

## PARTIES

8.      Plaintiff is, and at all relevant times has been, a shareholder of Patheon.

9.      Defendant Patheon is a public limited liability company organized under the laws of The Netherlands.  On July 26, 2016, Patheon completed an initial public offering of approximately 34 million shares and listed such shares on the New York Stock Exchange (NYSE) under the ticker symbol "PTHN".  The Company is a leading global provider of outsourced pharmaceutical development and manufacturing services.  Patheon also maintains eight business locations within the United States.

10.     Individual Defendant Paul S. Levy is, and has been at all relevant times, a director of the Company.

11.     Individual Defendant Daniel Agroskin is, and has been at all relevant times, a director of the Company.

12.     Individual Defendant Hugh Welsh is, and has been at all relevant times, a director of the Company.

13.     Individual Defendant Philip Eykerman is, and has been at all relevant times, a director of the Company.

14.     Individual Defendant Gary Pisano is, and has been at all relevant times, a director of the Company.

15.     Individual Defendant Pamela Daley is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant Jeffrey P. McMullen is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant William B. Hayes is, and has been at all relevant times, a director of the Company.

18.     Individual Defendant Hans Peter Hasler is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant Charles Cogut is, and has been at all relevant times, a director of the Company.

20.     Individual Defendant Stephan Tanda is, and has been at all relevant times, a director of the Company.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Patheon (the "Class").   Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of May 30, 2017, there were 145,136,214 shares of Patheon common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Patheon will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the proposed merger in the Recommendation Statement, in violation of Sections 14(e) and 14(d)(4) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

4

iii)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**I.     Thermo Fisher's Offer Price is Inadequate**

23.     Patheon N.V., incorporated on December 24, 2013, is a provider of outsourced pharmaceutical development and manufacturing services.  The Company's segments include Drug Product Services (DPS), Pharmaceutical Development Services (PDS) and Drug Substance Services (DSS).  The DPS segment is engaged in manufacturing and packaging for approved

prescription, over-the-counter and nutritional products.  The PDS segment provides a range of formulation, production and technical services from the early stages of a product's development to regulatory approval, as well as for new formulations of approved products for lifecycle extension. The DSS segment provides small molecule active pharmaceutical ingredient (API) and outsourced manufacturing solutions for large molecule biological API from early development through commercial scale production.

24.     The Offer Price appears inadequate given Patheon's recent financial performance and strong growth prospects.  Indeed, on June 8, 2017, the Company announced positive financial results for the 2017 second quarter.  Both revenue and earnings showed strong growth. Revenue increased 8% in year-over-year growth and earnings increased 13% in year-over-year growth. CEO Raj Rai announced: "During the second quarter we continued to build momentum with customers and make strategic investments to support our long-term growth outlook."

25.     Since the merger news broke, financial analysts that had previously marked Patheon as a stock to buy and to outperform the market have since downgraded those positions.

26.     In sum, the Offer Price appears to inadequately compensate Patheon shareholders for their shares.  Given the market reaction to the stock, it appears that $35.00 per share is not fair compensation for Patheon shareholders.  It is therefore imperative that Patheon shareholders receive the material information that has been omitted from the Recommendation Statement, so that they can make a fully informed decision concerning whether to tender their shares.

## II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers

27.     In addition to failing to obtain fair consideration for the Company's shareholders, Defendants have agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for the Company's assets.

28.     First, the Merger Agreement contains a no-solicitation provision that prohibits the Company or the Individual Defendants from taking any affirmative action to obtain a better deal for Patheon shareholders.  The Merger Agreement states that the Company and the Individual Defendants shall not "(i) solicit, initiate, or knowingly take any action to facilitate or knowingly encourage (including by providing information, cooperation or assistance) any inquiries or the making of any proposal or offer that constitutes or would reasonably be expected to lead to an Alternative Acquisition Proposal (as defined below); (ii) other than to disclose their non-solicitation obligations, enter into, continue, or otherwise participate in any discussions or negotiations, or otherwise knowingly cooperate in any way with any third party, regarding any Alternative Acquisition Proposal; or (iii) authorize, execute or enter into any letter of intent, memorandum of understanding, agreement in principle, merger agreement, acquisition agreement, option agreement, joint venture agreement, partnership agreement or other contract (whether or not binding) with respect to an Alternative Acquisition Proposal."

29.     Additionally, the Merger Agreement grants Thermo Fisher recurring and unlimited matching rights, which provides it with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) several days to amend the terms of the Merger Agreement and make a counter-offer in the event a superior offer is received.

30.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that Thermo Fisher can easily foreclose a competing bid.  As a result, these provisions unreasonably favor Thermo Fisher, to the detriment of Patheon's public shareholders.

31.     Lastly, the Merger Agreement provides that Patheon must pay Thermo Fisher a termination fee of $203 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide Patheon shareholders with a superior offer.

32.     Ultimately, these preclusive deal protection provisions restrain Patheon's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

33.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that Patheon shareholders receive all material information necessary for them to make a fully informed decision regarding whether to tender their shares.

**III.   The Materially Incomplete and Misleading Recommendation Statement**

34.     On May 31, 2017, Defendants filed the Recommendation Statement with the SEC.  The Recommendation Statement has been disseminated to the Company's shareholders, and solicits the Company's shareholders to tender their shares in the Tender Offer.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Recommendation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act.

35.    First, the Recommendation Statement fails to provide material information concerning the Company's financial projections. Specifically, the Recommendation Statement provides projections for non-GAAP (generally accepted accounting principles) metrics, including, among others, Adjusted EBITDA, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

36.    When a company discloses non-GAAP financial measures in a Recommendation Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

37.    Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique, company-specific non-GAAP financial measures (as Patheon has included in the Recommendation Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of

> consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

38.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

39.     In order to make the projections included on pages 45-46 of the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures (such as Adjusted EBITDA) to the most comparable GAAP measures.

40.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measure Adjusted EBITDA (i.e.,

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

income (loss) from continuing operations before repositioning expenses (including certain product returns and inventory write-offs recorded in gross profit), interest expense, foreign exchange losses reclassified from other comprehensive income (loss), refinancing expenses, acquisition and integration costs (including certain product returns and inventory write-offs recorded in gross profit), gains and losses on sale of capital assets, Biologics earnout income and expense, income taxes, impairment charges, remediation costs, depreciation and amortization, stock-based compensation expense, consulting costs related to our operational initiatives, purchase accounting adjustments, acquisition-related litigation expenses and other income and expenses.).  Such projections are necessary to make the non-GAAP Adjusted EBITDA projections included in the Recommendation Statement not misleading.

41.     On page 46 of the Recommendation Statement, the Company claims that GAAP reconciliation cannot be made available without unreasonable efforts.  This is a misstatement. Patheon regularly reconciles non-GAAP financial measures, including Adjusted EBITDA, to GAAP net income in their annual and quarterly financial reports submitted to the SEC (forms 10-K and 10-Q respectively).  In fact, the Company has performed line item GAAP reconciliations in all of their recent 10-K or 10-Q filings with the SEC.  Below is an excerpt from their most recent 10-Q filed on June 9, 2017:

Below is a reconciliation of Adjusted EBITDA to its most comparable U.S. GAAP measure.

28

**Notes to Unaudited Consolidated Financial Statements for the Three and Six Months Ended April 30, 2017**
**(Dollar information in tabular form is expressed in millions of U.S. dollars, except share data)**

|  | Three months ended April 30, | | Six months ended April 30, | |
|  | 2017 | 2016 | 2017 | 2016 |
|  | $ | $ | $ | $ |
| Total Adjusted EBITDA | 94.2 | 98.0 | 176.7 | 157.0 |
| Depreciation and amortization | (34.3) | (27.0) | (61.9) | (53.5) |
| Repositioning expenses [(1)] | (2.2) | (1.3) | (3.5) | (2.5) |
| Acquisition and integration costs | (8.1) | (7.6) | (11.6) | (10.2) |
| Interest expense, net | (30.8) | (42.6) | (59.0) | (86.4) |
| Benefit from (provision for) income taxes | 1.5 | (0.7) | 22.8 | — |
| Refinancing expenses | (6.3) | — | (6.3) | — |
| Operational initiatives related consulting costs | (1.4) | (1.9) | (2.5) | (3.3) |
| IPO costs | — | (0.4) | — | (0.8) |
| Acquisition related litigation expenses | (3.7) | (0.9) | (6.0) | (1.9) |
| Stock based compensation expense | (7.0) | (2.0) | (11.0) | (3.0) |
| FDA remediation costs | — | (10.1) | — | (18.5) |
| Environmental remediation costs | — | — | (3.7) | — |
| Bargain purchase gain | 26.4 | — | 26.4 | — |
| Other | (0.7) | (1.6) | (4.5) | 5.0 |
| Net income (loss) from continuing operations | 27.6 | 1.9 | 55.9 | (18.1) |

(1) Repositioning expenses for the three and six months ended April 30, 2017 includes $0.4 million and $1.1 million of inventory reserves related to the Swindon wind down recorded in cost of goods sold.

42.     The Recommendation Statement also fails to disclose the unlevered free cash flow projections calculated by Morgan Stanley in connection with their valuation of Patheon.[4]

43.     Additionally, the Recommendation Statement fails to disclose any of the projections calculated under the "sensitivity analysis."  The inclusion of this separate analysis in connection with the discounted cash flow analysis mandates the disclosure of the correlating projections.  Moreover, no reason is given for the inclusion of this sensitivity analysis except,

---

[4] "Morgan Stanley used estimates and extrapolations from the Management Projections for purposes of the discounted cash flow analysis, as more fully described below. Morgan Stanley first calculated the estimated unlevered free cash flows, which is defined as adjusted earnings before interest, taxes, depreciation and amortization, less (1) stock-based compensation expense, (2) cash taxes and (3) capital expenditures, and less or plus, as applicable, (4) changes in net working capital. Morgan Stanley's calculation of estimated unlevered free cash flows differed from the Management Projections by treating stock-based compensation as a cash expense whereas the Management Projections treated stock-based compensation as a non-cash expense." Recommendation Statement at 39.

apparently, to decrease the present value calculations of Patheon in order to make the Offer Price appear more attractive.  The failure to include these "sensitivity" projections renders the summary of Morgan Stanley's Discounted Cash Flow Analysis on page 39 of the Recommendation Statement materially incomplete and misleading.

44.     The omission of the above-referenced projections also renders the financial projections included on pages 38-39 of the Recommendation Statement materially incomplete and misleading.   If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

45.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement also fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 9.8% to 11.7%; (ii) the range of terminal values to which the growth rate range was applied; and (iii) the inputs and assumptions underlying the calculation of the perpetual growth rate range of 2.5% to 3.5%.

46.     These key inputs are material to Patheon shareholders, and their omission renders the summary of Morgan Stanley's Discounted Cash Flow Analysis incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M.

Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the

appropriate discount rate, and the terminal value . . ."  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any
> change can markedly affect the discounted cash flow value.  For
> example, a change in the discount rate by one percent on a stream of
> cash flows in the billions of dollars can change the discounted cash
> flow value by tens if not hundreds of millions of dollars . . . This
> issue arises not only with a discounted cash flow analysis, but with
> each of the other valuation techniques.  This dazzling variability
> makes it difficult to rely, compare, or analyze the valuations
> underlying a fairness opinion <u>unless full disclosure is made of the
> various inputs in the valuation process, the weight assigned for each,
> and the rationale underlying these choices</u>.  The substantial
> discretion and lack of guidelines and standards also makes the
> process vulnerable to manipulation to arrive at the "right" answer
> for fairness.  This raises a further dilemma in light of the conflicted
> nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

47.    With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the

Recommendation Statement fails to disclose the following key components used in their analysis:

(i) the inputs and assumptions underlying the calculation of the discount rate range of 7.7% to

8.9%; and (ii) estimates of Patheon's next twelve months EBITDA as of October 31, 2018 utilized

by Morgan Stanley in the Analysis.

48.    Again, these key inputs are material to Patheon shareholders.  It is important that

they may judge for themselves that these calculations are appropriate.  These inputs bear materially

on their decision of whether to tender their shares, because financial analysis based on faulty

discount rates can make merger consideration look far more attractive than it would otherwise.

Once a company speaks on a subject like this, there is a duty to do so in a non-misleading fashion.

The failure to provide the key inputs and assumptions underlying Morgan Stanley analyses renders

the summaries of these analyses in the Recommendation Statement materially incomplete and

misleading.

49.     With respect to Morgan Stanley's *Precedent Transactions* Analysis, the Recommendation Statement fails to disclose the individual multiples Morgan Stanley calculated for each of the transactions used.  A fair summary of such an analysis requires the disclosure of the individual multiples for each transaction utilized.  Merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the implied valuation of the Company.  The omission of the individual multiples renders the summary of this analysis set forth on pages 39-40 of the Recommendation Statement materially incomplete and misleading.

50.     With respect to Morgan Stanley's Precedent Premia Analysis, the Recommendation Statement fails to disclose the high, low, mean and median premia Morgan Stanley observed in connection with this analysis.  Merely providing the range that a banker applied is insufficient, as shareholders are unable to assess whether the banker applied an appropriate range, or, instead, applied an unreasonably low range in order to drive down the implied valuation of the Company.  The omission of this information renders the summary of this analysis on page 40 of the Recommendation Statement incomplete and misleading.

51.     Lastly, the Recommendation Statement fails to disclose a significant conflict of interest faced by Morgan Stanley.  Specifically, according to Bloomberg, Morgan Stanley currently holds 4,664,882 shares of common stock of Thermo Fisher Scientific Inc. (Thermo Fisher's parent company).  Based on Thermo Fisher Scientific Inc.'s trading price of $175.96 as of June 19, 2017, Morgan Stanley's shares are worth approximately *$820.8 million*.  Such information is material to Patheon shareholders and necessary for them to assess how much weight, if any, to assign to Morgan Stanley's fairness opinion.  The omission of this information renders the vague statement that Morgan Stanley "*may* at any time" hold positions in Thermo Fisher (Recommendation Statement at 41) materially incomplete and misleading, because Morgan Stanley *does in fact* currently hold a significant position in Thermo Fisher.

52.     In sum, the omission of the above-referenced information renders statements in the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(e) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ."  15 U.S.C. §78n(e).

55.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading*."  17 C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Recommendation Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100

56.     Defendants have issued the Recommendation Statement with the intention of soliciting Patheon shareholders to tender their shares.  Each of the Defendants reviewed and authorized the dissemination of the Recommendation Statement, which fails to provide material information regarding Patheon's financial projections and the valuation analyses performed by Morgan Stanley.

57.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).  The Individual Defendants were therefore reckless, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Recommendation Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

58.     The Individual Defendants were privy to and had knowledge of the projections for the Company and the details concerning Morgan Stanley's valuation analyses.  The Individual Defendants were reckless in choosing to omit material information from the Recommendation Statement, despite the fact that such information could have been disclosed without unreasonable efforts.

59.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against all Defendants for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9,17 C.F.R. § 240.14d-9)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.   Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

62.     SEC Rule 14d-9(d), which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

63.     In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

> Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances  under which they are made, not materially misleading.

64.     The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

65.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, Defendants undoubtedly reviewed the omitted material information in connection with approving the proposed merger.

66.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision regarding whether to tender their shares if such misrepresentations and omissions are not corrected prior to the Expiration Date.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Patheon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Patheon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement by Plaintiff to be misleading prior to the date the Recommendation Statement was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants that shareholders tender their shares in the Tender Offer.   They were thus directly involved in preparing this document.

71.     In addition, as the Recommendation Statement sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the merger agreement.   The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), 14(d)(4) and Rule 14d-9 by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

74.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying

Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from closing the Tender Offer or consummating the proposed merger, unless and until the Company discloses the material information discussed above which has been omitted from the Recommendation Statement;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 19, 2017                          Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  /s/ *Nadeem Faruqi*
 Nadeem Faruqi (No. NF-1184)
 James M. Wilson, Jr. (No. JW-8569)
 685 Third Avenue, 26th Fl.
 New York, NY 10017
 Telephone: (212) 983-9330
 Facsimile: (212) 983-9331
 Email: nfaruqi@faruqilaw.com
        jwilson@faruqilaw.com

**MONTEVERDE & ASSOCIATES PC**
 Juan E. Monteverde (No. JM-8169)
 The Empire State Building
 350 Fifth Avenue, Suite 4405
 New York, NY 10118
 Tel: (212) 971-1341
 Fax: (212) 202-7880
 E-mail: jmonteverde@monteverdelaw.com

 *Attorneys for Plaintiff*